# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ROD PATROS ROMAYA,

        Defendant-Appellant.

UNPUBLISHED
April 16, 2015

No. 319388
Macomb Circuit Court
LC No. 2012-004019-FC

Before: HOEKSTRA, P.J., and MARKEY and DONOFRIO, JJ.

PER CURIAM.

A jury convicted defendant of two counts of first-degree criminal sexual conduct (CSC), MCL 750.520b, and three counts of second-degree CSC, MCL 750.520c. The trial court sentenced defendant as an habitual offender, second offense, MCL 769.10, to concurrent prison terms of 262 to 444 months' imprisonment for each first-degree CSC conviction, and 120 to 270 months' imprisonment for each second-degree CSC conviction. Defendant appeals as of right. For the reasons explained in this opinion, we affirm.

Defendant was convicted of sexually abusing his biological daughter, MR. In January 2009, when MR was 10 years old, defendant moved her to the United States from Iraq, where she had been living with her mother. MR had met defendant before, but had never lived with him before coming to the United States. MR testified that after she moved in with defendant, he touched her breasts underneath her clothes on several occasions. Defendant's behavior eventually escalated to forcing MR to touch his penis and put his penis in her mouth. On one of those occasions, MR used her T-shirt to clean herself after defendant ejaculated on her, and she saved the shirt in a plastic bag. That shirt was turned over to the police. Forensic testing revealed the presence of seminal fluid on MR's shirt, and the pattern of the stain was consistent with a wiping motion. The defense stipulated that defendant's DNA was on the shirt. Defendant left the country after Child Protective Services (CPS) began an investigation, and he was apprehended several months later in Sweden. The defense theory at trial was that defendant did not do anything inappropriate, and that the prosecution witnesses were not credible.

## I. SELF-REPRESENTATION AT TRIAL

Defendant first argues that the trial court violated his right to self-representation by concluding that defendant could not represent himself at trial. Because the record discloses that

-1-

defendant never requested that he be allowed to represent himself, and instead continuously expressed a desire for representation by counsel, we find no merit to this argument.

The Sixth Amendment of the United States Constitution explicitly guarantees a defendant in a criminal case the right to the assistance of counsel and implicitly guarantees the right of self-representation. *Faretta v California*, 422 US 806, 818-832; 95 S Ct 2525; 45 L Ed 2d 562 (1975). "[A] defendant has a constitutional entitlement to represent himself or to be represented by counsel—but not both." *People v Dennany*, 445 Mich 412, 442; 519 NW2d 128 (1994).

> Upon a defendant's initial request to proceed pro se, a court must determine that (1) the defendant's request is unequivocal, (2) the defendant is asserting his right knowingly, intelligently, and voluntarily . . . and (3) the defendant's self-representation will not disrupt, unduly inconvenience, and burden the court and the administration of the court's business. [*People v Russell*, 471 Mich 182, 190; 684 NW2d 745 (2004).]

The trial court must also satisfy MCR 6.005(D), which involves advising a defendant of the charges, possible sentences, and risks of self-representation and offering a defendant the opportunity to consult with an attorney. *Russell*, 471 Mich at 190.

The initial inquiry, however, is whether a defendant unequivocally requested self-representation. See *People v Williams*, 470 Mich 634, 641; 683 NW2d 597 (2004). The purpose of the unequivocal requirement is to "abort frivolous appeals by defendants who wish to upset adverse verdicts after trials at which they had been represented by counsel." *People v Anderson*, 398 Mich 361, 367; 247 NW2d 857 (1976). Courts indulge every reasonable presumption against the waiver of the right to counsel, and for this reason any ambiguity in a defendant's request should be resolved in favor of representation. *Russell*, 471 Mich at 193. A request to proceed in propria persona with standby counsel may be considered an unequivocal request for self-representation, *People v Hicks*, 259 Mich App 518, 531; 675 NW2d 599 (2003); but, requests for substitute counsel or expressions of mere dissatisfaction with counsel do not constitute unequivocal requests for self-representation. See, e.g., *United States v Martin*, 25 F3d 293, 296 (CA 6 1994); *People v Payne*, 27 Mich App 133, 135-136; 183 NW2d 371 (1970).

In this case, the record discloses that defendant did not unequivocally express a desire to waive his right to counsel and to represent himself. He instead sought an adjournment to hire new counsel. Specifically, on the day trial was scheduled to begin, defendant appeared in court with his second court-appointed attorney, complained that there had been a breakdown in the attorney-client relationship, and requested an adjournment to hire a new attorney. The trial court agreed to release defendant's attorney and adjourn trial, but cautioned defendant that if he did not retain an attorney by the next scheduled trial date, trial would not be adjourned and he would have to represent himself. Defendant promised that he would "hire a lawyer, hundred percent." Despite defendant's assurance, the trial court attempted to follow the procedural requirements in *Anderson* and MCR 6.005(D). The trial court began by informing defendant of the charges and possible penalties, at which point defendant repeatedly interrupted to proclaim his innocence. At that point, without completing a full colloquy under *Anderson* and MCR 6.005(D), the trial court concluded that defendant "could not represent himself, he just couldn't." Defendant did

not disagree, and continued to express that he wanted an attorney to represent him. At no time did defendant make a request, let alone an unequivocal request, to represent himself.[1]

From the record, it is clear that the option of defendant representing himself was raised by the trial court, not defendant, as an alternative method of avoiding another adjournment if defendant failed to hire an attorney. Acceding to defendant's expressed desire for a new attorney, the trial court arranged for the appointment of a third attorney, in case defendant did not hire an attorney, and scheduled a new trial date that allowed sufficient time for the new attorney, whether retained or appointed, to prepare for trial. Defendant proceeded with his third court-appointed attorney at all subsequent hearings, trial, and sentencing. Because defendant never made an unequivocal request that he be allowed to represent himself, the trial court was not required to conduct a full colloquy under *Anderson* and MCR 6.005(D), and there is no merit to defendant's argument that his right of self-representation was violated.

## II. APPOINTMENT OF NEW COUNSEL

Defendant argues that the trial court abused its discretion by denying his request for new counsel made on the first day of trial. In particular, defendant contends that the trial court failed to conduct an adequate inquiry into the breakdown in the attorney-client relationship and denied defendant a fair trial by failing to appoint substitute counsel.

"A trial court's decision regarding substitution of counsel will not be disturbed absent an abuse of discretion." *People v Traylor*, 245 Mich App 460, 462; 628 NW2d 120 (2001). "A trial court abuses its discretion when its decision falls 'outside the range of principled outcomes.' " *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010) (citation omitted). As this Court explained in *Traylor*, 245 Mich App at 462:

> An indigent defendant is guaranteed the right to counsel; however, he is not entitled to have the attorney of his choice appointed simply by requesting that the

---

[1] Defendant suggests on appeal that, although he did not make a specific request to represent himself on the first day of trial, he did make such a request at a preliminary examination. Reviewing the preliminary examination transcript, we conclude that defendant also failed to make an unequivocal request to represent himself at that time. At the preliminary examination, defendant's attorney stated that defendant "has a right to represent himself, *if* he wants to represent himself . . . ." Based on this passing remark by defendant's attorney, the district court briefly considered whether defendant could represent himself and concluded that, "if" there was a motion for defendant to represent himself, it was denied because defendant's remarks were not always lucid and he did not have a sufficient grasp of the legalities involved. However, while defendant's attorney and the district court discussed the possibility of self-representation, defendant never made such a request on the record. Defendant requested dismissal of his attorney, but he also asserted that "I need attorney, attorney defending me, listening to me what I'm saying to him . . . ." Fairly read, defendant may have been unhappy with his counsel at the time of the preliminary examination, and he may have requested new counsel, but he did not make an unequivocal request to represent himself.

attorney originally appointed be replaced. Appointment of a substitute counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process. Good cause exists where a legitimate difference of opinion develops between a defendant and his appointed counsel with regard to a fundamental trial tactic. [Citation omitted.]

A defendant's general unhappiness with counsel's representation or a mere allegation that a defendant lacks confidence in his or her attorney, unsupported by a substantial reason, does not constitute good cause for the substitution of counsel. *People v Strickland*, 293 Mich App 393, 398; 810 NW2d 660 (2011). The circumstances that would justify good cause depend on the facts of each case. *People v Buie*, 298 Mich App 50, 67; 825 NW2d 361 (2012). "When a defendant asserts that the defendant's assigned attorney is not adequate or diligent, or is disinterested, the trial court should hear the defendant's claim and, if there is a factual dispute, take testimony and state its findings and conclusion on the record." *Strickland*, 293 Mich App at 397 (citation omitted).

In this case, initially, we reject defendant's claim that the trial court did not adequately inquire into the breakdown in the attorney-client relationship. The trial court gave defendant an opportunity to place his complaints about counsel's alleged inadequacies on the record, and allowed defense counsel to respond. The trial court also invited defendant to submit in writing any further grievances against defense counsel. In short, the trial court gave defendant ample opportunity to voice his claims and the trial court was clearly aware of defendant's complaints regarding appointed counsel.

Further, defendant's complaints did not establish good cause for the appointment of new counsel. Defendant stated that he was dissatisfied with defense counsel's preparedness because counsel did not subpoena defense witnesses that he recommended, and they had little communication before trial. However, the record does not disclose, nor did defense counsel ever indicate, that he was unprepared or needed more time. To the contrary, counsel appeared to be fully aware of the facts of the case, which were not overly complex, and counsel advised the court that he was ready to proceed. Even if defense counsel did not communicate with defendant as much as defendant would have preferred, defendant admitted that defense counsel visited him in jail on two occasions. Defense counsel claimed that he visited defendant "several times at the jail," and defendant acknowledged communicating with counsel by virtue of his ongoing complaint that defense counsel was not following his instructions. Nothing in counsel's performance suggests that he was "inadequate, lacking in diligence, or disinterested" in defendant's case, and thus, counsel's alleged failures did not establish good cause for substitution of counsel. See *Buie*, 298 Mich App at 68.

Defendant also expressed his dissatisfaction that defense counsel did not contact and subpoena the witnesses he recommended. Both of defendant's first two appointed attorneys made efforts to contact defendant's witnesses. After appointing defense counsel as defendant's third attorney, the trial court granted counsel's request for an investigator "to help locate" "several" potential defense witnesses. On the first day of trial, counsel advised the court that he had worked with the investigator and that "his efforts did not lead []to any witnesses that . . . might be produced[.]" Defendant admitted that defense counsel advised him that his witnesses were "no good." Defense counsel also explained that he had "an active trial strategy," that

defendant sought the presentation of evidence that was "not supportable," and that "some of" defendant's proposed "attacks against the complainant are just not admissible." Counsel was not required to "advocate a meritless position." *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000). Moreover, counsel's decisions about defense strategy, including what evidence and witnesses to present, are matters of trial strategy, *People v Rockey,* 237 Mich App 74, 76; 601 NW2d 887 (1999), and disagreements regarding matters of trial strategy or professional judgment do not warrant appointment of substitute counsel, *Traylor*, 245 Mich App at 463.

Furthermore, defendant waited until the day of trial to request new counsel. The jury and witnesses were present, and the prosecutor and defense counsel were ready to proceed. Defendant had previously requested new counsel on the prior trial date, and the court granted an adjournment. A substitution of counsel on the adjourned trial date, when both the prosecutor and defense counsel were ready to proceed, would have unreasonably delayed the judicial process. Cf. *Strickland*, 293 Mich App at 399. Consequently, the trial court did not abuse its discretion by denying defendant's request for a new attorney.

### III. EVIDENCE OF FLIGHT

Next, defendant argues on appeal that evidence relating to his flight from the country following the initiation of an investigation by CPS should not have been admitted at trial. Specifically, defendant maintains that, because he left the country before being charged with a crime, there is no indication that he fled to avoid criminal prosecution. According to defendant, the evidence of flight was therefore irrelevant and substantially more prejudicial than probative.

Because defendant did not object to the challenged flight evidence, this claim is not preserved. Accordingly, our review is limited to plain error affecting substantial rights. *People v Benton*, 294 Mich App 191, 202; 817 NW2d 599 (2011).

"It is well established in Michigan law that evidence of flight is admissible." *People v Coleman*, 210 Mich App 1, 4; 532 NW2d 885 (1995). The term "flight" has been applied to such actions as fleeing the scene of the crime, leaving the jurisdiction, resisting arrest, attempting to escape custody, and running from the police. *Id.* "Such evidence is probative because it may indicate consciousness of guilt, although evidence of flight by itself is insufficient to sustain a conviction." *Id.* For evidence of flight to be admissible, the prosecutor is not required to prove that a defendant fled because he or she was " 'motivated' by fear of apprehension." *People v Smelley*, 485 Mich 1023; 776 NW2d 310 (2010). "As bearing upon the motive of the accused in fleeing, it is competent for the prosecution to show that the defendant has knowledge of facts from which it might readily be inferred that an investigation would be made and evidence discovered tending to establish the defendant's guilt." 29 Am. Jur. 2d Evidence § 543. Further, "the fact that the defendant has not been taken into custody or formally arrested before a hasty departure, affects the weight and not the admissibility of the evidence." 29 Am. Jur. 2d Evidence § 543. See also *People v Compeau*, 244 Mich App 595, 598; 625 NW2d 120 (2001). "[I]t is always for the jury to determine whether evidence of flight occurred under such circumstances as to indicate guilt." *People v Unger*, 278 Mich App 210, 226; 749 NW2d 272 (2008).

In this case, there was evidence that defendant left the country shortly after seeing a letter affixed to his front door advising him that CPS would like to speak with him about "some allegations." The friend whom defendant contacted to transport him to Canada was not expecting defendant's call. Defendant contacted the same friend at a later time, asking the friend to have defendant's two brothers "sell all of his belongings in the apartment" and "send him the money because he doesn't have any money." Defendant's family members did not know that defendant was leaving the country, did not know his whereabouts, and had no way of contacting him. Several months after leaving, defendant was apprehended in Sweden. Contrary to what defendant now argues, his actions of abruptly leaving the jurisdiction and hiding in a foreign country after learning of a possible CPS investigation supported an inference that he was attempting to avoid detection by leaving the country, and thus his actions constituted evidence of "flight" which was admissible to support an inference of guilt. See *Unger*, 278 Mich App at 226.

Furthermore, we are not persuaded that the evidence of flight should have been excluded because it was unduly prejudicial. Under MRE 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *People v Cameron*, 291 Mich App 599, 610; 806 NW2d 371 (2011). MRE 403 is not intended to exclude "damaging" evidence, because any relevant evidence will be damaging to some extent; rather, MRE 403 is only intended to prohibit evidence which is unfairly prejudicial. *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995). Under the balancing test of MRE 403, this Court must first decide if the evidence was unfairly prejudicial, and then " 'weigh the probativeness or relevance of the evidence' against the unfair prejudice" to determine whether any prejudicial effect substantially outweighed the probative value of the evidence. *Cameron*, 291 Mich App 611 (citation omitted). Unfair prejudice exists where there is "a danger that marginally probative evidence will be given undue or pre-emptive weight by the jury" or "it would be inequitable to allow the proponent of the evidence to use it." *Mills*, 450 Mich at 75-76. Unfair prejudice "refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *Cameron*, 291 Mich App at 611 (citation omitted).

We are not persuaded that the flight evidence in this case was unfairly prejudicial. Certainly this evidence was damaging to defendant's position, but we see no indication that the jury was incapable of rationally weighing the flight evidence or that this evidence injected extraneous considerations into the lawsuit. Moreover, in its final instructions, the trial court gave a cautionary instruction on the use of flight evidence that limited the potential for any prejudice, and juries are presumed to follow their instructions. See *People v Breidenbach*, 489 Mich 1, 13; 798 NW2d 738 (2011). Accordingly, there was no error in admitting the challenged evidence as evidence of flight.[2]

---

[2] Because the evidence was properly admitted, any objection by defense counsel to the presentation of this evidence would have been futile. Consequently, insofar as defendant asserts on appeal that counsel provided ineffective assistance by failing to object to the flight evidence, his argument is without merit because counsel cannot be considered ineffective for failing to raise a futile objection or advocate a meritless position. *Snider*, 239 Mich App at 425.

## IV. *ALLEYNE V UNITED STATES*

Defendant next argues that judicial fact-finding by the trial court when scoring the sentencing guidelines variables entitles him to resentencing under *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013). In *Alleyne*, the United States Supreme Court held that, pursuant to a defendant's Sixth Amendment right to an impartial jury, facts that increase a mandatory minimum sentence must "be submitted to a jury and found beyond a reasonable doubt." *Id.* at 2163. As defendant acknowledges, in *People v Herron*, 303 Mich App 392, 405; 845 NW2d 533 (2013), appeal held in abeyance ___ Mich ___; 846 NW2d 924 (2014), this Court determined that, notwithstanding *Alleyne*, judicial fact-finding incident to the scoring of the Michigan sentencing guidelines does not violate the Sixth Amendment. Because we are required to follow *Herron*, see MCR 7.215(J)(1), we reject this claim of error.

## V. DEFENDANT'S STANDARD 4 BRIEF

Defendant raises additional issues in a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4. Having reviewed each of these arguments, we disagree with defendant's additional claims.

### A. SHACKLING

Defendant argues that the trial court deprived him of a fair trial by forcing him to wear leg irons throughout the trial, without providing any justification for the restraint. Defendant never raised this issue in the trial court, leaving the issue unpreserved. Accordingly, our review is limited to plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

A defendant has a due process right to be free of shackles or handcuffs during trial. *People v Dixon*, 217 Mich App 400, 404; 552 NW2d 663 (1996). However, this right is not absolute; a trial court may order a defendant to be restrained if the court finds that restraint is necessary to prevent escape, to prevent injury to persons in the courtroom, or to maintain an orderly trial. *People v Dunn*, 446 Mich 409, 425; 521 NW2d 255 (1994). If a defendant is improperly restrained, he or she will nonetheless not be entitled to relief on appeal unless there is some showing that the defendant was prejudiced by the shackles. *People v Horn*, 279 Mich App 31, 36; 755 NW2d 212 (2008). "[A] defendant is not prejudiced if the jury was unable to see the shackles on the defendant." *Id.*

In this case, the record lacks any evidence that defendant's legs were actually shackled or, if they were, that the shackling was visible to jurors.[3] Thus, there is no basis for finding plain

---

[3] Although defendant has filed an affidavit with this Court averring that he was shackled during trial, that the "chain rattled whenever [he] moved," and that "everyone in the jury pool was able to see that [he] was wearing leg irons[,]" this affidavit is not evidence. Further, while defendant provided his affidavit in conjunction with a motion to remand, his motion focused on claims of ineffective assistance, and he did not seek remand to develop a factual record regarding the

error (i.e., an error that is "clear" or "obvious"). See *Carines*, 460 Mich at 763. As a comparison, in *People v Solomon (Amended Opinion)*, 220 Mich App 527, 532; 560 NW2d 651 (1996), this Court rejected a similar claim where "the record lacks any discussion concerning the basis for defendant's being shackled, there is no indication that the defense objected to the shackling or called upon the trial court to unshackle defendant, and there was no showing of actual prejudice." Because the record in this case similarly fails to support defendant's claim and there has been no showing of prejudice, we reject this claim of error.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

On appeal, defendant raises several claims of ineffective assistance of counsel.[4] Because defendant failed to raise his ineffective assistance of counsel claims in the trial court in connection with a motion for a new trial or a request for an evidentiary hearing, our review of this issue is limited to mistakes apparent from the record. *People v Sabin (On Second Remand)*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000). To establish ineffective assistance of counsel, defendant first must show that counsel's performance was below an objective standard of reasonableness. *People v Armstrong*, 490 Mich 281, 290; 806 NW2d 676 (2011). Second, defendant must show that but for counsel's deficient performance, it is reasonably probable that the result of the proceeding would have been different. *Id.* Defendant bears the burden of establishing the factual predicate of his ineffective assistance claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Effective assistance of counsel is presumed and defendant bears a heavy burden of proving otherwise. *Rockey*, 237 Mich App at 76.

## 1. DEFENDANT'S RIGHT TO TESTIFY AT TRIAL

Defendant first argues that defense counsel prevented him from exercising his constitutional right to testify on his own behalf. Defendant alleges that defense counsel interfered with defendant's right to testify at trial by agreeing to investigate the case, locate witnesses, and prepare a defense only if defendant agreed not to testify.

Contrary to these assertions, the record does not support defendant's argument that defense counsel deprived him of his right to testify at trial. A criminal defendant has a fundamental constitutional right to testify at trial. US Const, Am XIV; Const 1963, art 1, §§ 17,

---

shackling issue. In any event, a panel of this Court denied his motion to remand, and that decision has now become the law of the case. See *People v White*, 307 Mich App 425, __; __ NW2d __ (2014), slip op at 2. In short, there is no record evidence supporting defendant's assertion that he was restrained and that, if he was restrained, the shackles were visible to the jury.

[4] To the extent defendant now reiterates his request for a remand to establish an evidentiary record relating to his ineffective assistance of counsel claims, his request for a remand was previously denied by a panel of this Court, and that decision now constitutes the law of the case. See *White*, slip op at 2. In any event, having reviewed the record in the case and defendant's proffered affidavit, defendant's ineffective assistance claims are without merit and we see no need for the development of a further evidentiary record.

The decision to testify or not to testify is a strategic one "best left to an accused and his counsel." *People v Martin*, 150 Mich App 630, 640; 389 NW2d 713 (1986). "Although counsel must advise a defendant of this right, the ultimate decision whether to testify at trial remains with the defendant." *People v Bonilla–Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011). "If the accused expresses a wish to testify at trial, the trial court must grant the request, even over counsel's objections." *People v Simmons*, 140 Mich App 681, 685; 364 NW2d 783 (1985). "[I]f defendant . . . decides not to testify or acquiesces in his attorney's decision that he not testify, the right will be deemed waived." *Id.* (citation and quotations omitted).

There is no basis in the record for concluding that defense counsel deprived defendant of his constitutional right to testify. The record indicates that after the prosecution rested, the trial court advised defendant of his right to testify or not testify, and informed him that the decision whether to testify was defendant's "and [his] alone." Defendant stated that he understood that the decision was his, and indicated that he had discussed the matter with defense counsel. Defense counsel stated on the record that he had advised defendant not to testify, and asked defendant if he agreed. Defendant then stated, "You told me that but I'd like to testify because I want to tell everybody how she's lying. That's all." When defense counsel requested an opportunity to further discuss the matter with defendant, the trial court allowed defendant's nephew to accompany them into a private room and then, at defendant's request for "time to think about it," gave defendant "overnight to discuss this with [his] attorney, [his] family member and anybody else [he] wish[ed]." The following day, the trial court again advised defendant of his right to testify or not to testify, and again explained that the decision was his and his alone. Defense counsel stated on the record that he and defendant had discussed whether defendant was going to testify, and that defendant agreed that he was not going to testify. Defendant confirmed that it was his decision to not testify. Defendant did not claim that he was ignorant of his right to testify, or that defense counsel had coerced him into not testifying.

The record reflects that defendant was properly advised that it was solely his decision whether to testify, that he was given ample opportunity to contemplate his decision and discuss it with anyone he wished, and that he personally and voluntarily elected not to testify as a matter of trial strategy. Thus, the record does not support defendant's claim that he was prohibited from testifying, and defendant has not overcome the strong presumption of sound strategy regarding any advice counsel may have offered him in respect to his decision to testify. See *Rockey*, 237 Mich App at 76.

## 2. FAILURE TO ADEQUATELY COMMUNICATE A PLEA OFFER

The record also fails to support defendant's claim that he was denied the effective assistance of counsel because a plea offer was not adequately communicated to him. At a pretrial hearing on February 5, 2013, the prosecutor placed the first plea offer on the record, which involved defendant pleading guilty to three counts of second-degree CSC. The prosecutor also stated that, if a plea was not reached, it would be amending the information to add counts of first-degree CSC. At that time, defendant's first attorney asked for time to discuss it with defendant. When court reconvened on February 12, the defense attorney stated that defendant refused to discuss the plea and wanted a new lawyer. By the pretrial hearing on February 27, defendant had new counsel and the prosecutor placed a second plea offer on the record, again involving defendant's guilty plea to three counts of second-degree CSC in exchange for which

the prosecutor would not amend the information to add first-degree CSC. Defendant's second attorney stated that he had discussed the plea offer with defendant, and that defendant "was not interested in the plea." In response to the trial court's questions, defendant confirmed that he had heard the plea offer and that it was his decision to reject it. At a subsequent hearing on July 23, defendant's second attorney advised the trial court that defendant was dissatisfied with his services and, among other complaints, believed that his attorney had not adequately explained the second plea offer to him. In response, the trial court stated:

> The plea negotiation in this matter before the remand to District Court was clearly explained to you and was made part of the court record. You were absolutely aware of the ramifications of you going forward to an examination and the amendment from the prosecution to criminal sexual conduct in the first degree. [Defendant], it was on this record in front of me right here.

The record of later proceedings also discloses that defendant continued to express that he had no interest in negotiating or accepting a plea offer. For example, on the first day of trial, defense counsel (defendant's third attorney) stated for the record that he tried to "persuade" defendant to plead, but that defendant "is adamantly proclaiming his innocence" and "in the event that [defendant] is convicted, [the defense attorney] want[ed] it known that [he] did discuss with [defendant] a possible sentence agreement." On the record presented, it is abundantly clear that defense counsel conveyed plea offers to defendant and that those offers were rejected because defendant believed in his innocence; thus, defendant has failed to establish that he was denied the effective assistance of his counsel on this ground.[5] See *Lafler v Cooper*, ___ US ___; 132 S Ct 1376, 1384-1385; 182 L Ed 2d 398 (2012); *People v Douglas*, 496 Mich 557, 596-598; 852 NW2d 587 (2014).

### 3. FAILURE TO FOLLOW DEFENDANT'S INSTRUCTIONS

Finally, we also reject defendant's claims that defense counsel was ineffective for failing to act in accordance with defendant's instructions or failing to consult with defendant about what evidence to present at trial. As noted, decisions about defense strategy, including what arguments to make, what evidence to present, whether to call witnesses, and how to impeach witnesses are matters of trial strategy. *Rockey*, 237 Mich App at 76. Counsel has wide discretion in matters of trial strategy, *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012), and "this Court will not second-guess defense counsel's judgment on matters of trial strategy," *Benton*, 294 Mich App at 203. Defendant has not identified any act or omission by counsel that prejudiced his case.

---

[5] Defendant asserts in his affidavit that his second attorney did not explain the possibility of pleading no contest. There is no indication in the record that defendant had an opportunity to plead no contest in this case. Furthermore, as discussed, his comments throughout the proceedings and in his affidavit indicate that he had no interest in entering a plea. Indeed, even in his affidavit, defendant acknowledges that he was not willing to enter a plea because he denied that he committed any sexual offenses against MR.

In particular, defendant argues that defense counsel should have called "Nicole," whom defendant claims is the person who smeared his semen on the t-shirt, and "each woman with whom the defendant has had a sexual relationship" to testify "that the defendant does not have any sexual interest in underage[] girls." Defense counsel has a duty "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary," including an obligation to investigate key potential witnesses. *People v Trakhtenberg*, 493 Mich 38, 52-55; 826 NW2d 136 (2012) (citation omitted). However, ultimately, the failure to present a witness can constitute ineffective assistance only where it deprives the defendant of a substantial defense. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). In this case, defense counsel worked with an investigator to attempt to locate defendant's witnesses and to support defendant's claimed defense. Defendant stated on the record that defense counsel advised him that his proposed witnesses were "no good." Given that counsel did investigate defendant's proposed witnesses, defendant has not overcome the strong presumption that counsel chose not to call these witnesses as a matter of trial strategy. *Rockey*, 237 Mich App at 76. Further, defendant has not provided a witness affidavit from "Nicole" or any other witness, or identified any other evidence of record establishing that any witness actually could have provided favorable testimony at trial. Absent such a showing, defendant has not established that he was prejudiced by defense counsel's failure to call these witnesses at trial. Cf. *People v Davis*, 250 Mich App 357, 369; 649 NW2d 94 (2002).

We also reject defendant's claim that defense counsel should have called an expert in "sexual disorders" to "explain to a jury that pedophilia does not just suddenly erupt out of nowhere[.]" Defendant has not made an offer of proof regarding the substance of any testimony that an expert witness could have offered. See *Hoag*, 460 Mich at 6. A defendant cannot establish his claim of ineffective assistance of counsel using speculation that an expert would have testified favorably. *Payne*, 285 Mich App at 190. Moreover, defendant has failed to overcome the presumption that defense counsel's decision not to call an expert witness was reasonable trial strategy. *Id*.

Defendant also argues that defense counsel should have pursued a proposed defense theory based on an alleged cellular telephone text message that allegedly contains an extortion attempt by defendant's former wife (not MR's mother) to file false sexual assault charges if defendant did not turn over certain property to her. Defendant has not presented us with these purported messages, nor has he explained how this evidence would have added anything of value to his defense in this case. There is no record evidence that defendant's former wife had any direct involvement in this case. Defendant has not overcome the presumption that counsel exercised reasonable strategy by not presenting a seemingly unconnected extortion attempt by his former wife, or shown a reasonable probability that the result of the trial would have been different had he done so. *Armstrong*, 490 Mich at 289-290.

In his last complaint, defendant provides a litany of questions that he contends defense counsel should have asked MR in order to impeach her credibility. Decisions regarding how to question witnesses are presumed to be matters of trial strategy, *Horn*, 279 Mich App at 39, and the record does not show that defense counsel's proffered defense or impeachment efforts were objectively unreasonable or prejudicial. Although defense counsel did not ask every particular question now proposed by defendant, defense counsel cross-examined MR at length about her testimony and was successful in revealing some inconsistencies in her recount of what occurred.

Further, to the extent defendant and counsel more generally disagreed over the appropriate defense to pursue, in the lower court record, counsel explained that an investigator "failed to find evidence supporting [defendant's] proposed defense and the rules of evidence prevented [counsel] from presenting the defense that [defendant] wished." Overall, having reviewed the record, we see nothing objectively unreasonable or prejudicial in counsel's performance. "The fact that defense counsel's strategy may not have worked does not constitute ineffective assistance of counsel." *People v Stewart (On Remand)*, 219 Mich App 38, 42; 555 NW2d 715 (1996).

Affirmed.

/s/ Joel P. Hoekstra
/s/ Jane E. Markey
/s/ Pat M. Donofrio